IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO P. SANCHEZ, | ) Case No. 09-5574 SC |
| Plaintiff, | ) ORDER GRANTING IN PART AND ) DENYING IN PART DEFENDANT'S |
| v. | ) MOTION FOR ATTORNEY'S FEES |
| BANK OF AMERICA F/K/A COUNTRYWIDE HOME LOANS; NATIONS FIRST LENDING, INC.; ALCA CORPORATION D/B/A HOME FUNDERS FINANCIAL; ROMEO FELISCO ALVIDERA; GI HUANG LI; and DOES 1-20 inclusive, | ) ) ) ) ) ) |
| Defendants. | ) |

## I. INTRODUCTION

Now before the Court is a Motion for Attorney's Fees filed by Defendant Countrywide Home Loans, Inc. ("Countrywide") against Plaintiff Antonio Sanchez ("Plaintiff"). Docket No. 40 ("Motion"). Plaintiff filed an Opposition, which included a request to strike portions of Countrywide's Motion; Countrywide filed a Reply. Docket Nos. 41 ("Opp'n"), 43 ("Reply").[1]

Based on the papers submitted by the parties, and for the reasons described below, the Court hereby DENIES Plaintiff's request to strike and GRANTS IN PART AND DENIES IN PART the Motion for Attorney's Fees.

---

[1] No other Defendant participated in this Motion.

## II. BACKGROUND

In his initial Complaint, filed November 24, 2009, Plaintiff challenged alleged misconduct that took place during the origination of a housing loan. See Docket No. 1 ("Compl."). Among the eleven causes of action named in the Complaint were two federal causes of action: violation of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"). See id.

Various Defendants filed motions to dismiss or otherwise responded to the Complaint. Docket Nos. 16, 20, 22-24. In response, Plaintiff filed an untimely Statement of Non-Opposition, Docket No. 30 ("SNO"), stating that he did not oppose dismissal of the two federal causes of action. Plaintiff argued that because "Plaintiff's federal claims against all the defendants are now dismissed," the Complaint failed "to state a basis for the Court's jurisdiction and this Court should dismiss the complaint without prejudice." SNO at 2 n. 1. On the following day, February 26, 2010, Plaintiff filed an Amended Complaint, Docket No. 31 ("Am. Compl."), in violation of Federal Rule of Civil Procedure 15(a)(1)(B), which requires amended pleadings to be filed within twenty-one days of service of a Rule 12(b) motion. Plaintiff's Amended Complaint included seven state law causes of action and no federal causes of action. See Am. Compl.

The Court issued an Order to Show Cause why the case should not be dismissed. Docket No. 36 ("OSC"). In Plaintiff's Response, Docket No. 37 ("OSC Response"), Plaintiff's counsel Sharon Lapin ("Lapin") admitted that the Statement of Non-Opposition and Amended

1 Complaint were untimely filed, provided no reasons why the filings
2 were late or incomplete, and requested that any sanctions be
3 imposed on Lapin herself and not on Plaintiff.  OSC Response at 1-
4 2.  At the show cause hearing on April 9, 2010, the Court dismissed
5 the action against all Defendants with prejudice and permitted
6 Defendants to file motions for attorney's fees.  Docket No. 39.

7 Countrywide seeks $27,459 in attorney's fees, citing Civil
8 Local Rule 11-6(a) as the source of the Court's sanctioning power.
9 Mot. at 5.

**III. LEGAL STANDARD**

   **A.   Sanctions**

In the present action, there are three relevant legal bases on which the Court can rely in awarding attorney's fees as a sanction. Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  The court may impose sanctions under section 1927 sua sponte. Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir. 2000).  Second, under Civil Local Rule 11-6, the court may impose "appropriate sanctions" if the court "has cause to believe an attorney has engaged in unprofessional conduct."  Civ. L.R. 11-6(a)(2)-(3).  Third, courts have inherent power to issue sanctions as necessary to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Chambers v. NASCO, Inc., 501 U.S. 32, 43

1 (1992) (citation and quotation marks omitted). The court may impose sanctions sua sponte under this authority. <u>Roadway Exp., Inc. v. Piper</u>, 447 U.S. 752, 765 (1980).

**B.   Calculation of Attorney Fees**

"The determination of attorney fees is within the sound discretion of the trial court." <u>Zuniga v. United Can Co.</u>, 812 F.2d 443, 454 (9th Cir. 1987). To determine a reasonable fee, the court should first "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)). "Second, the court must decide whether to enhance or reduce the lodestar figure based on an evaluation of the <u>Kerr</u> factors that are not already subsumed in the initial lodestar calculation." <u>Fischer</u>, 214 F.3d at 1119 (citing <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975). The <u>Kerr</u> factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Quesada v. Thomason</u>, 850 F.2d 537, 539 n.1 (9th Cir. 1988).

///

///

**IV. DISCUSSION**

**A. Plaintiff's Request to Strike**

Countrywide attached to its Motion a transcript of Lapin's appearance at a show cause hearing in another case filed by Lapin against Countrywide, Jimenez v. Bank of America FKA Countrywide Home Loans, No. 09-05575. Goldberg Decl. Ex. A ("Jimenez Transcript").[2] Plaintiff requests the Court strike the Jimenez Transcript as "clearly an effort to unfairly prejudice the Court by the introduction of extraneous material which is irrelevant to the violations asserted in the case at bar." Opp'n at 7.

In this Transcript, Lapin admits to filing thirty-two mortgage cases in the Northern District of California, Jimenez Transcript at 21:7-10, and filing more than 110 mortgage cases in California in federal court, id. at 21:11-13. Lapin also admits that federal courts have sanctioned her for these litigation tactics. Id. at 21:21-23. The Court finds that the Jimenez Transcript is relevant to show Lapin's repeated disregard for court rules, Lapin's knowledge of those rules, and a pattern of abusive litigation behavior supporting a finding of bad faith or improper purpose by Lapin in the present action. Therefore, the Court DENIES Plaintiff's request to strike the Transcript.

**B. Sanctions**

A specific finding of subjective bad faith by a counsel before the court will support a sanction of attorney's fees under 28 U.S.C. § 1927. Salstrom v. Citicorp Credit Servs., Inc., 74 F.3d 183, 184-85 (9th Cir. 1996). The same finding supports sanctions

---

[2] James Goldberg ("Goldberg"), counsel for Countrywide, has filed a declaration in support of the Motion. Docket No. 40-1.

5

under the court's local rules, <u>Zambrano v. City of Tustin</u>, 885 F.2d 1473, 1482 (9th Cir. 1989), and under the court's inherent power, <u>Primus Auto. Fin. Servs., Inc. v. Batarse</u>, 115 F.3d 644, 648-49 (9th Cir. 1997).

Under 28 U.S.C. § 1927, the court may find bad faith "when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent," <u>Estate of Blas ex rel. Chargualaf v. Winkler</u>, 792 F.2d 858, 860 (9th Cir. 1986), or when litigation conduct is "undertaken to increase expenses or delay," <u>New Alaska Dev. Corp. v. Guetschow</u>, 869 F.2d 1298, 1306 (9th Cir. 1989). Under Civil Local Rule 11-6, in addition to a finding of bad faith or abusive litigation, the sanction should be "relatively mild" and (1) consistent with higher authority, (2) necessary for the conduct of the court's business, (3) consistent with "principles of right and justice," and (4) "proportionate to the offense and commensurate with principles of restraint and dignity in judicial power." <u>Zambrano</u>, 885 F.2d at 1479-80. Monetary sanctions imposed under the court's inherent power are appropriate if the court makes an explicit finding that the underlying conduct constitutes bad faith, <u>Primus</u>, 115 F.3d at 648-49, or if bad faith is patent from the record, <u>Optyl Eyewear Fashion Intern. v. Style Co.</u>, 760 F.2d 1045, 1050 (9th Cir. 1985).

The Court finds Lapin acted in bad faith in the present action. Lapin filed a baseless Complaint for an improper purpose against Countrywide, she failed to comply with court rules, and she unreasonably and vexatatiously multiplied proceedings in the present action by filing an untimely Statement of Non-Opposition

and an Amended Complaint. Over the last year, Lapin has filed more than thirty nearly identical actions in the Northern District of California on behalf of mortgage holders against their brokers and others in the mortgage business.[3] Each of these actions has been dismissed. The majority of them follow the exact pattern found in the present case -- Lapin files a complaint with federal and state causes of action, defendant files a motion to dismiss the federal causes of action, Lapin files a statement of non-opposition, and the court grants defendant's motion to dismiss.[4] Those that do

---

[3] E.g., Gonzalez v. GMAC Mortgage, LLC, No. 09-04571; Hall v. PLM Lender Servs., No. 09-04760; Acevedo v. JP Morgan Chase, No. 09-04765; Garlick v. Am. Home Mortgage Serv. Inc., No. 09-05015; Pasco v. Chase Home Finance, No. 09-05017; Johansen v. First Franklin Loan Servs., No. 09-05018; Turchie v. EMC Mortgage Corp., No. 09-05019; Leiva v. PennyMac Loan Servs., LLC, No. 09-05566; Morales v. Bank of America, No. 09-05566; Becerra v. Ocwen Loan Servicing, No. 09-05568; Almaraz v. JP Morgan Chase, No. 09-05569; Leiva v. Citi Mortgage, Inc., No. 09-05571; Soto v. Indymac Mortgage Servs., No. 09-05572; Saucedo v. First Franklin Loan Servs., No. 09-05573; Jimenez v. Bank of America, No. 09-05575; Leiva v. Bank of America, No. 09-05576; Martinez v. GMAC Mortgage, LLC, No. 09-05577; Ramos v. Aurora Loan Servs., No. 09-05579; Kaleb v. Bank of America Home Loans, No. 09-05958; Wright v. Saxon Mortgage Servs., No. 09-05960; Mendez v. EMC Mortgage Corp., No. 09-05961; Sanchez v. Citi Mortgage, No. 10-000006; Robinson v. Bank of America, No. 10-00050; Lobato v. Citibank NA, No. 10-00106; Aragon v. Bank of America, No. 09-05016; Ulloa v. Wachovia Mortgage, No. 09-05570; Ramirez v. Countrywide Home Loans, No. 09-05578; Chuakay v. IndyMac Mortgage Servicing, No. 10-00051; Vo v. Downey Savings and Loan Assoc., No. 09-03985; O'Hearn v. Wells Fargo Bank NA, No. 09-04762.

[4] E.g., Gonzalez v. GMAC Mortgage, LLC, No. 09-04571; Garlick v. Am. Home Mortgage Serv. Inc., No. 09-05015; Johansen v. First Franklin Loan Servs., No. 09-05018; Turchie v. EMC Mortgage Corp., No. 09-05019; Morales v. Bank of America, No. 09-05566; Becerra v. Ocwen Loan Servicing, No. 09-05568; Almaraz v. JP Morgan Chase, No. 09-05569; Leiva v. Citi Mortgage, Inc., No. 09-05571; Saucedo v. First Franklin Loan Servs., No. 09-05573; Leiva v. Bank of America, No. 09-05576; Martinez v. GMAC Mortgage, LLC, No. 09-05577; Kaleb v. Bank of America Home Loans, No. 09-05958; Wright v. Saxon Mortgage Servs., No. 09-05960; Mendez v. EMC Mortgage Corp., No. 09-05961; Sanchez v. Citi Mortgage, No. 10-000006; Robinson v. Bank of America, No. 10-00050; Ulloa v. Wachovia Mortgage, No. 09-05570; Ramirez v. Countrywide Home Loans, No. 09-05578; Chuakay v. IndyMac

not follow this precise pattern have been dismissed after Lapin failed to appear for a show cause hearing, e.g., Argon v. Bank of America, No. 09-05016, or upon Lapin's stipulation to dismissal at a motion hearing, e.g., O'Hearn v. Wells Fargo Bank, No. 09-04762. Motions for sanctions have been filed in several actions. E.g., Jimenez, No. 09-05575, Docket No. 26; Lobato, No. 10-00106, Docket No. 28. Sanctions have been imposed in at least one action. Swanson v. EMC Mortgage Corp., No. 09-1507, 2010 WL 1173089 (E.D. Cal. Mar. 23, 2010).

Furthermore, the facts show that Lapin knew at the time she filed Plaintiff's Complaint that this behavior was improper. On October 29, 2009, Judge O'Neill in the Eastern District of California dismissed with prejudice an action brought by Lapin on behalf of another plaintiff. Swanson, No. 09-1507, 2009 WL 3627925, *1 (E.D. Cal. Oct. 29, 2009). The order stated, "this Court is concerned that Ms. Swanson has brought this action in absence of good faith and that Ms. Swanson exploits the court system solely for delay or to vex." Id. at *13. The court held that "attempt to vex or delay provides further grounds to dismiss this action." Id. Both this dismissal with prejudice and a related order to show cause predate Lapin's November 29, 2009 filing of the Complaint in the present action. While Lapin claims that her "significant and regrettable" errors "fall far short of the subjective intentional bad faith and willful vexation and harassment," Opp'n at 5, this timing suggests otherwise.

The Court identifies with particularity Lapin's bad-faith

---

Mortgage Servicing, No. 10-00051; Vo v. Downey Savings and Loan Assoc., No. 09-03985.

8

conduct in this action.  Lapin brought an action in federal court and failed to make a timely response to Defendants' motions to dismiss.  She filed an untimely Statement of Non-Opposition in which she did not oppose dismissal of the federal causes of action -- the only basis for the Court's subject matter jurisdiction.  Then she filed an untimely Amended Complaint with no federal causes of action and no other basis for subject matter jurisdiction.  She has employed similar tactics in dozens of other actions filed throughout California.  The only reasonable explanation is that Lapin is seeking to prolong lawsuits that appear to have no merit.  At the show cause hearing and in her Opposition to this Motion, Lapin did not provide an alternative explanation for her conduct.

    The Court finds an award of attorney's fees is both necessary for the conduct of the Court's business and proportionate to the offense.  As requested, the Court will sanction Lapin, rather than her client.[5]  An award of attorney's fees will serve to deter Lapin and others from filing actions that they have no intent of litigating.  An award of fees to Countrywide is the appropriate and proportionate sanction, as it will compensate Countrywide for the costs incurred due to Lapin's abusive conduct.  In sanctioning Lapin, the Court relies on 28 U.S.C. § 1927, Civil Local Rule 11-6, and the Court's inherent power.

---

[5] Countrywide requests that the sanction be imposed on Lapin and James Sandison ("Sandison"), citing Lapin's statements in the Jimenez Transcript suggesting Sandison is Lapin's employer.  Mot. at 4.  The Court declines to do so.  Lapin has contested this allegation, Opp'n at 7, and Sandison is not a counsel of record in this action.  Lapin's statements made in a separate action do not justify an order of sanctions against a third party.

### C. Calculation of Attorney Fees

Countrywide seeks $27,459 in attorney's fees. Mot. at 2. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed," and if the evidence is lacking, "the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. Countrywide has not provided the Court with actual billing records from this action.

Countrywide claims 80.3 hours of attorney time and 9.5 hours of paralegal time were spent drafting and revising Countrywide's Motion to Dismiss, Docket No. 16 ("MTD"), and various other documents. Id. at 3. Countrywide provides the total number of hours worked by four attorneys and three paralegals, and provides hourly rates for each individual ranging from $125 to $464. Id. at 2-3. The average hourly rate is $306 per hour ($27,459 divided by 89.8 hours).

Aside from a short description of each attorney and paralegal's qualifications, Countrywide provides no support for the reasonableness of the billing rates. It has not provided sworn affidavits from each attorney who worked on the matter. It has not provided attorney affidavits regarding "prevailing fees in the community" or "rate determinations in other cases," both of which are "satisfactory evidence of the prevailing market rate." United Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990). Nor has it itemized the time spent on each filing.

Despite these shortcomings, the Court finds the hourly rates provided by Countrywide to be reasonable. Other courts have found

similar rates for attorneys practicing in San Francisco to be reasonable. E.g., Asis Internet Servs. v. Optin Global, Inc., No. 05-05124, 2010 WL 2035327, *6 (N.D. Cal. May 19, 2010) (finding hourly rates of $180-$220 for junior attorneys, $240-$280 for temporary attorneys, and $350-$425 for senior attorneys to be reasonable based on the court's "familiarity with the prevailing rates in this district"); Meyer v. ARS Nat. Servs., Inc., No. 07-6422, 2008 WL 3979466, *2 (N.D. Cal. Aug. 26, 2008) (finding $300 to be a reasonable hourly rate for attorneys practicing in the San Francisco Bay Area).

While Countrywide's claimed rates are reasonable, the amount of time Countrywide claims to have spent working on this case is not. Countrywide claims a total of 89.8 attorney and paralegal hours. Mot. at 3. One of Countrywide's chief criticisms of Lapin is that she commenced "virtually identical" actions by filing "cookie cutter" complaints with "boilerplate claims." MTD at 2-3, OSC Reply at 4, Mot. at 4. In fact, Lapin has filed other actions against Countrywide in which Countrywide retained the same counsel. E.g., Jimenez, No. 09-05575. Because Countrywide has defended itself in near-identical prior actions by other plaintiffs represented by Lapin, Countrywide's attorneys would have spent less time responding to this action, as the legal questions raised were not novel or difficult.

The number of hours claimed by Countrywide is also considerably greater than the number sought by movants in similar cases. In Swanson, the defendant claimed 28.75 hours of services rendered in responding to a similar action filed by Lapin. 2010 WL

1173089 at *8. In another attorney's fees motion in the present action, Defendants Alca Corporation and Romeo Felisco Alvidera claim 31.5 hours of services rendered. Docket No. 42, Ex. A.

In light of these considerations, the Court finds the reasonable number of hours to be thirty hours, rather than 89.8 hours. Multiplying this number by Countrywide's average hourly rate ($306 per hour) yields a lodestar of $9,180. Because the Court considered a number of the Kerr factors in determining the reasonable hourly rate and reasonable number of hours worked, the Court opts against enhancing or reducing this amount based on a consideration of the other factors. The Court thus finds $9,180 to be a reasonable calculation of attorney's fees, and a "relatively mild" sanction in light of Lapin's bad faith misconduct.

## V. CONCLUSION

For the reasons stated above, Plaintiff Antonio Sanchez's request to strike is DENIED. Defendant Countrywide Home Loans, Inc.'s Motion for Attorney's Fees is GRANTED IN PART AND DENIED IN PART. Plaintiff's counsel, Sharon Lapin, is hereby ordered to pay Defendant Countrywide Home Loans, Inc. $9,180 in attorney's fees as a sanction for her misconduct in this case.

IT IS SO ORDERED.

Dated: June 10, 2010

UNITED STATES DISTRICT JUDGE